J-A14024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: S.A., A MINOR   :   IN THE SUPERIOR COURT OF
                                              :           PENNSYLVANIA
                                                :

APPEAL OF: C.A., FATHER                : 
                                              :
  :
  :
  :
  :
  :
  :   No. 2911 EDA 2025

Appeal from the Orders Entered October 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000595-2025

BEFORE: STABILE, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                 **FILED JUNE 30, 2026**

In this dependency matter, C.A. (Father) appeals from the orders adjudicating S.A. (Child) (a daughter born in April 2018) dependent, finding Father to be a perpetrator of child abuse, and finding aggravated circumstances existed as to Father.[1] After careful review, we affirm.

The juvenile court summarized the facts underlying this appeal as follows:

> On June 18, 2025, the Department of Human Services (DHS) received a Child Protective Services (CPS) report after [Child] was brought to the hospital by Father because [Child] was going in and out of consciousness. Father, Mother, and [Child] lived together in a studio apartment [(sometimes hereinafter "the home")]. N.T., 10/17/25, at 95. At the hospital, [Child] was given two

---

[1] The juvenile court's orders also found Child's mother, M.D. (Mother), to be a perpetrator of child abuse, and found aggravated circumstances existed as to Mother. **See** Orders, 10/17/25. Mother did not appeal and is not a party to the instant appeal.

doses of Narcan, and she "tested positive for fentanyl." Forensic Interview Summary, 6/26/25, at 2. Doctors "certified this as a near fatality." *Id.* In the CPS report, Father and [Mother] were identified as the "alleged perpetrators." N.T., 9/2/25, at 20.

On June 19, 2025, DHS Social Work Services Case Worker Tahjae Nunes (Mr. Nunes) met with [Child] at the hospital. Mr. Nunes testified [at the subsequent dependency hearing] that he asked [Child] "if she touched anything that she wasn't supposed to," and [Child] replied that "she had previously disposed of needles within the home, and she said that the needles did belong to Mother." *Id.* at 23. [Child] "couldn't say when this occurred." *Id.* [Child could not specify how she came into contact with fentanyl on the date of the incident.]

Later the same day, Mr. Nunes went to [Child's] home and met with Father. [According to Mr. Nunes,] Father said "that he was unsure, at the time when he brought [Child] into the hospital, … what was wrong with her." *Id.* at 23-24. **Father did admit "that Mother is an active substance user within the home, and he's aware of** … [**Mother**] **using" around** [**Child**]. *Id.* at 24. [Father told Mr. Nunes that] Mother entered "a drug treatment facility" on the same day [Child] was brought to the hospital, and Mother has a "history of using substances," including "actively using within the home." *Id.* at 24-25. [Father related to Mr. Nunes that] the police "had been out to the home and confiscated a bag of needles, as well as tourniquets and other drug paraphernalia." *Id.* at 25. Father also admitted that "he has [a] history of using substances." *Id.*

The hospital requested an evaluation of [Child] from its "child protection team." N.T., 10/17/25, at 27. This evaluation was conducted on June 19, 2025, by Dr. Norell Atkinson [(Dr. Atkinson)]. *Id.* Dr. Atkinson spoke with Father, who provided "a history of [Mother] using substances in the home." *Id.* at 34. In her report, Dr. Atkinson wrote the following:

> **Father reports that Mother continued to use drugs around** [**Child**], but typically [Mother] would go into the bathroom to use and shut the door. **Father always told** [**Child**] **to never touch her Mother's thing** [*sic*]. He states that when Mother left for rehab, he found large amounts of paraphernalia in trash bags around the house.

- 2 -

Child Protection Program Consultation Report, 6/19/25, at 7[2]. Father talked about Mother's "use of cocaine or … dope," the latter of which Dr. Atkinson understood to be referring to opioids and fentanyl. N.T., 10/17/25, at 45.

On June 2[5], 2025, [Child underwent] a forensic interview at Philadelphia Children's Alliance (PCA). During this interview, [Child] testified regarding needles used by Mother, and said that "[Child] takes the needle out from her mom and throws it away." Forensic Interview Summary, 6/26/25, at 4.

[Child] was moved from her home and DHS "tried a safety plan with a family friend." N.T., 9/2/25, at 26. It was "later determined that [Child] was unsafe and an [Order for Protective Custody] was obtained." *Id.* [Child] was placed in "general foster care" on July 7, 2025. *Id.* at 28.

Juvenile Court Opinion, 1/28/26, at 1-3 (unpaginated) (some record citations, capitalization, and punctuation modified; emphasis added).

The juvenile court summarized the ensuing dependency proceedings as follows:

On July 15, 2025, DHS filed a dependency petition for [Child]. The petition alleged child abuse by Father [and Mother,] and asked the court to adjudicate [Child] dependent; [] commit [Child] to DHS; [] determine that aggravated circumstances exist; and [] order the disposition best suited to the welfare of [Child].

[A bifurcated] hearing on the dependency petition … began on September 2, 2025, and … concluded on October 17, 2025. [Child] provided in-camera testimony to the court. [Child] testified that she did not want to see Father without supervision because "he hits me with a belt." N.T., 9/2/25, at 9. [Child] clarified that this happened twice because "I have an F on a test." *Id.* at 10. [Child answered affirmatively when] asked if she liked talking to Father on the phone. *Id.* at 17. Regarding her preferences if she were to see Father, [Child] stated that she would "want somebody else there, but I don't want to be alone with my dad." *Id.* at 25. [Regarding] Mother, [Child] stated she did not want to see [Mother] because "[Mother] has needs and everything." *Id.* at 12.

[Mr. Nunes testified as summarized above. *See* N.T., 9/2/25, at 8-58; *see also* N.T., 10/17/25, at 121 (juvenile court finding Mr. Nunes's testimony "credible in its entirety"). In providing expert testimony,] Dr. Atkinson affirmed that she gave her opinions "with a reasonable degree of medical certainty." N.T., 10/17/25, at 44. Dr. Atkinson explained that "fentanyl in a child's system can be fatal," and that [Child] was given Narcan because fentanyl "is a substance that could be fatal in a young child." *Id.* at 39; *see also id.* at 41 (stating that Narcan was appropriate because doctors were not able "to wake [Child] up" and because [Child's] pupils were "very tiny, or what we would call constricted pupils"). Dr. Atkinson's evaluation found what happened to [Child] to be "concerning for neglect." *Id.* at 43. She also explained that the case warranted the "near fatality certification … from the Commonwealth of Pennsylvania," because [Child] came in "with a near-fatal episode of abuse or neglect" that required "a medical intervention." *Id.* at 44.

Father also testified at the dependency hearing.[2] Father admitted to "a history of substance abuse," but testified that he has been sober "since 2015." *Id.* at 75. He then testified that Mother ha[d] been sober and that, until a week prior to this incident, he had no "reason to believe that [Mother] was using drugs in" the studio apartment where they lived together. *Id.* at 78-80; *see also id.* at 93 (Father stating that "there was never no drugs in [his] house that [he] knew of").[3]

_____

[2] Mother did not testify and was not present at the dependency hearing, though counsel appeared on her behalf. *See generally* N.T., 9/2/25; N.T., 10/17/25.

[3] Father testified that on June 12, 2025, he found a bag of "dope" in the home's bathroom. N.T., 10/17/25, at 81. Father stated he angrily confronted Mother about the drugs and, in the course of the confrontation, he hit Mother's foot with a broomstick. *Id.* at 82. Mother called the police, who arrested Father. *Id.* According to Father, he told police Mother was using drugs, but police did nothing about it. *Id.* at 83. Father testified that he spent the night in jail, and the criminal court entered a "stay-away order" that barred him from having contact with Mother. *Id.* at 83-84. Following his release from jail on June 13, 2025, Father returned to the home. *Id.* at 90. Father testified that, due to the stay-away order, he asked Mother to vacate the home and go
*(Footnote Continued Next Page)*

At the conclusion of the hearing, the court found DHS had met its burden by clear and convincing evidence and determined that Father [and Mother were] perpetrator[s] of child abuse pursuant to 23 Pa.C.S.A. § 6303(b.1). Order of Adjudication and Disposition, 10/17/25. Specifically, the court found Father had committed child abuse within the scope of subsections 6303(b.1)(1), (5), and (7)…. ***Id.*** **At the hearing, the court explained that it found the testimony of Mr. Nunes and Dr. Atkinson "credible," thus finding incredible Father's testimony that "he didn't have any knowledge that Mother was using drugs within the home."** N.T., 10/17/25, at 125. **The court concluded that clear and convincing [evidence] existed to find "that Father was aware of Mother's drug usage within the home and in front of [] Child."** ***Id.***[4]

_____

to a drug treatment facility. ***Id.*** at 90. According to Father, Mother went to a treatment facility on June 13, 2025. ***Id.*** at 92. Father also testified that, upon his return home from jail, he found a bag of drug paraphernalia in the bathroom and threw it in the garbage can. ***Id.*** at 90-91. Father claimed he did not know of drugs ever being in the home, with the exception of the June 12-13, 2025, episode he described. ***Id.*** at 93, 96.

[4] The juvenile court stated it "doesn't find all of [Father's] testimony credible in terms of the … sequence of events." N.T., 10/17/25, at 123. The court noted that, contrary to Father's testimony, ***see*** n.3 ***supra***, Child testified that Mother had been living in the home "the last time [Child] was there[.]" ***Id.*** at 117. The court deemed Child's testimony credible, and found Mother had been living in the home on June 18, 2025, "when [Child] wound up in the hospital later that … evening." ***Id.*** The court also made the following factual findings and credibility determinations:

> Mr. [Nunes] testified that Father informed Mr. [Nunes] that Mother is an active user around [C]hild. And … Dr. Atkinson [testified] … that Father indicated [Mother] used cocaine and dope, and that [Father] said [Mother] used substances in the home. [Mother] would use in the bathroom.
>
> So all that credible testimony the [c]ourt finds is opposite to what Father testified to[,] where … he didn't have any knowledge

*(Footnote Continued Next Page)*

In a separate order, the court found that DHS had met its burden, by clear and convincing evidence, that aggravated circumstances exist as to Father. Aggravated Circumstances Order, 10/17/25. At the hearing, the court stated that "Father clearly has his own responsibilities and needed to take a little bit more … protective steps to prevent this near fatality from occurring." N.T., 10/17/25, at 126. Notwithstanding [its aggravated circumstances finding], the court still [ordered a goal of] "reunification," and told Father that the court was giving Father "an opportunity to work" toward reunification. *Id.* at 173-74.

Juvenile Court Opinion, 1/28/26, at 3-4 (unpaginated) (some record citations, capitalization, and punctuation modified; emphasis and footnotes added).

Father timely appealed, and filed a contemporaneous statement of errors complained of on appeal under Pa.R.A.P. 1925(a)(2)(i). The juvenile court filed an opinion under Rule 1925(a). Father presents the following questions for our review:

1. Did the [juvenile] court err as a matter of law and abuse its discretion when it made a finding of child abuse against Father in the absence of clear and convincing evidence that Father intentionally, knowingly, or recklessly perpetrated child abuse against [Child] through a recent act or omission as required under 23 Pa.C.S.[A.] §§ 6303(b.1)(1), (5), and (7)?

2. Can the [juvenile] court's finding of child abuse against Father be affirmed pursuant to 23 Pa.C.S.[A.] § 6381(d) in the absence of clear and convincing evidence that Child suffered abuse "of such

that Mother was using drugs within the home, and when he did find out about the drugs, he threw them out as a result.

So specifically, … when Father testified that "I never saw Mother use drugs in the home," that is the opposite to what the testimony was of [C]hild and of Mr. [Nunes,] and what Father told Mr. [Nunes], and also what Father told Dr. Atkinson.

*Id.* at 124-25.

a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent"?

3. Did the [juvenile] court err as a matter of law and abuse its discretion when it made a finding of aggravated circumstances against Father in the absence of clear and convincing evidence that the [C]hild was the victim of "physical abuse" resulting in "serious bodily injury" or "aggravated physical neglect" committed by Father?

Father's Brief at 3.

In his first issue, Father argues the juvenile court erred and abused its discretion in finding Father to be a perpetrator of child abuse under 23 Pa.C.S.A. § 6303(b.1). *See* Father's Brief at 16-29. Father concedes that Child "suffered bodily injury," but asserts "that he is [not] responsible for these unfortunate events as a perpetrator by omission." *Id.* at 21. Father notes the juvenile court found that Mother is "the active drug user here, and Mother is the one who … put the drugs in front of" Child. *Id.* at 20 (quoting N.T., 10/17/25, at 126). Father maintains "DHS failed to present clear and convincing evidence that Father was aware of any ongoing risk of harm to [Child] after he removed Mother from the home and discarded all the paraphernalia he could find." *Id.* at 21. Father argues DHS failed to establish that Father acted with the requisite *mens rea*—either intentionally, knowingly, or recklessly—with respect to any risk of harm to Child. *Id.*; *see also id.* at 18-20.

Though both Mr. Nunes and Dr. Atkinson testified that Father indicated his awareness that Mother used drugs in the home and around Child, Father

argues that neither Mr. Nunes nor Dr. Atkinson specified *when* Father became aware of Mother's drug use. *Id.* at 22, 24. Father maintains these witnesses' testimony was therefore not inconsistent with Father's own testimony, *i.e.*, that he was unaware of Mother's drug use in the home until June 12, 2025. *Id.* Father further argues these witnesses' testimony did not establish that Father ever "allowed" Mother's drug use around Child. *Id.*

Father also argues "the record does not support a conclusion that Father's inaction caused [Child's] exposure to fentanyl." *Id.* at 25. Father asserts that he took "numerous, meaningful steps to protect [Child] from Mother's drug use once he became aware of [Mother's] relapse." *Id.* Relying on his own testimony, Father maintains that he told police about Mother's drug use on June 12, 2025; evicted Mother from the home on June 13, 2025, "and retained [Child] in his custody"; and searched for and discarded all drug paraphernalia he could find. *Id.* Father argues the record established that, "[f]ar from consciously perceiving and ignoring any ongoing risk to [Child's] safety, … Father took appropriate steps to eliminate the risk of harm to [Child] once he became aware of it[,] and believed he had effectively done so." *Id.* at 25-26.

Father acknowledges the juvenile court found his "testimony regarding the sequence of events" to be not credible. *Id.* at 26 (citing N.T., 10/17/25, at 123). While Father testified Mother left the home on June 13, 2025, the juvenile court found Mother continued to reside there through June 18, 2025,

based on Child's testimony that Mother was living in the home the last time Child was there. *See* N.T., 10/17/25, at 117. Father contends that Child's testimony "lack[ed] the specificity required to prove by clear and convincing evidence that Mother was actively residing in the home on the date the incident occurred[.]" Father's Brief at 26. Father therefore disputes that Child's testimony conflicted with his own. *Id.*

We apply the following standard of review:

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion. The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality prejudice, bias, or ill-will. An abuse of discretion will not result merely because the reviewing court might have reached a different decision because we are not in a position to make the close calls based on fact-specific determinations.

*Int. of S.A.S.*, 305 A.3d 1039, 1050 n.3 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted); *see also In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (recognizing that, in dependency cases, appellate courts "must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness…. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.").

"[Although] dependency proceedings are governed by the Juvenile Act[, 42 Pa.C.S.A. §§ 6301-6475,] … the Child Protective Services Law (CPSL)[, 23 Pa.C.S.A. §§ 6391-6387,] … controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence." ***In re L.V.***, 209 A.3d 399, 417 (Pa. Super. 2019) (citations omitted); ***see also In the Interest of X.P.***, 248 A.3d 1274, 1276 (Pa. Super. 2021) (same). The CPSL "does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child." ***In the Interest of J.R.W.***, 631 A.2d 1019, 1022 (Pa. Super. 1993). "The [Juvenile] Act and the CPSL must be applied together in the resolution of child abuse complaints under the CPSL and reference must be made to the definition sections of both the [Juvenile] Act and the CPSL to determine how that finding of child abuse is interrelated." ***Id.*** at 1023.

"'As part of a dependency adjudication, a court may find a parent or caregiver to be the perpetrator of child abuse' as defined by the … CPSL." ***In re S.L.***, 202 A.3d 723, 728 (Pa. Super. 2019) (citation and quotations omitted).

***Int. of G.R.***, 282 A.3d 376, 380-81 (Pa. Super. 2022) (footnotes and some

brackets omitted; some citations modified).

The requisite standard of proof

for a finding of child abuse pursuant to section 6303(b.1) of the CPSL is clear and convincing evidence. A petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S.A. § 6341(c). Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. … As an appellate court, we are required to accept the findings of fact and credibility determinations of the trial court, if they are supported by the record; however, this Court is not bound by the lower court's inferences or conclusions of law.

*Int. of G.R.*, 282 A.3d at 381 (quoting *In the Interest of N.B.-A.*, 224 A.3d 661, 668) (Pa. 2020)) (brackets, quotation marks, and some citations omitted).

Section 6303(b.1) defines "child abuse," in pertinent part, as follows:

**Child abuse**.--The term "**child abuse**" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

\*\*\*

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

\*\*\*

(7) Causing serious physical neglect of a child.

23 Pa.C.S.A. § 6303(b.1)(1), (5), (7).

Section 6303(c) provides as follows:

**Restatement of culpability**.--Conduct that causes injury or harm to a child or creates a risk of injury or harm to a child shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly when causing the injury or harm to the child or creating a risk of injury or harm to the child.

*Id.* § 6303(c).

Section 6303(a) includes the following relevant definitions:

"**Bodily injury**."  Impairment of physical condition or substantial pain.

\*\*\*

"**Near fatality**."  A child's serious or critical condition, as certified by a physician, where that child is a subject of the report of child abuse.

- 11 -

\*\*\*

> "**Serious physical neglect**."  Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.
>
> (2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

*Id.* § 6303(a).

Section 6303(a) also incorporates the definitions of "intentionally," "knowingly," and "recklessly" set forth in the Crimes Code, which provides, in part, as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and

- 12 -

unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b); *see also* 23 Pa.C.S.A. § 6303(a).

Instantly, in its Rule 1925(a) opinion, the juvenile court set forth the following analysis and conclusion regarding its finding that Father was a perpetrator of child abuse:

There is clear and convincing evidence to support the court's finding of child abuse under each of the subsections [6303(b.1)(1), (5), and (7)]. A finding of child abuse under any one of these three subsections is sufficient to support the court's Order of Adjudication and Disposition.

The evidence is clear and convincing that Father knowingly and recklessly failed to take steps to protect [Child] from a dangerous environment, and that this act of omission caused bodily injury to [Child]. Father openly admitted to DHS that he was aware of Mother's drug use in the house where [Child] lived. He failed to act in a manner to protect [Child] from exposure to these narcotics. As a result, [Child] had a near-death experience and ended up in the hospital, requiring [the administration of] Narcan as she slipped in and out of consciousness. Father has committed child abuse within the meaning of [subsection] 6303(b.1)(1).

The evidence is clear and convincing that Father knowingly and recklessly created a reasonable likelihood of bodily injury by failing to act. By leaving [Child] in an environment of narcotics and drug paraphernalia, including needles, [Child's] near-death experience was eminently foreseeable. Father has committed child abuse within the meaning of [subsection] 6303(b.1)(5).

The evidence is clear and convincing that Father knowingly and recklessly caused serious physical neglect of [Child] through an egregious failure to supervise. [Child] was only seven years old when Father failed to supervise her living situation in a way that shielded her from the known hazards of Mother's drug use.

Nothing could make it clearer that Father's failure endangered [] Child's life and health more than what actually happened: [Child] had to be rushed to the hospital as she slipped in and out of consciousness. Father has committed child abuse within the meaning of [subsection] 6303(b.1)(7).

The court did not err in its finding of child abuse as to Father's inaction to protect [Child]. Father knowingly and recklessly allowed [Child] to be around dangerous drug paraphernalia, and this abuse came frighteningly close to killing [Child]. The court's finding of child abuse pursuant to [section] 6303(b.1) should be upheld.

Juvenile Court Opinion, 1/28/26, at 7-8 (unpaginated) (some capitalization and punctuation modified).

We agree with the juvenile court's analysis and conclusion. Our review confirms its findings are supported by the record, and its legal conclusions are sound. We observe that Father's argument relies heavily on his own testimony, which the juvenile court explicitly deemed not credible. Though Father attempts to characterize his version of events as not inconsistent with the testimony of other witnesses, the juvenile court determined otherwise. We reiterate that the juvenile court is "free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Int. of S.A.S.*, 305 A.3d at 1050 n.3. The juvenile court's factual findings and credibility determinations are binding on this Court where, as here, the record supports them. *See Int. of G.R.*, 282 A.3d at 381. Accordingly, we defer to the juvenile court and decline Father's invitation to reweigh the evidence. *See In re R.J.T.*, 9 A.3d at 1190. Father's first issue merits no relief.

- 14 -

In his second issue, Father argues the juvenile court erred in applying section 6381(d) of the CPSL in connection with its finding that Father was a perpetrator of child abuse. *See* Father's Brief at 29-36. Section 6381(d) provides as follows:

> **Prima facie evidence of abuse**.--Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d).

We observe that, though a petitioner "must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, … in certain situations, the identity of the abuser need only be established through *prima facie* evidence." *Int. of G.R.*, 282 A.3d at 381 (citation omitted). "Section 6381(d) of the CPSL establishes a rebuttable, evidentiary presumption when a child sustains abuse not ordinarily suffered absent acts or omissions of a parent or other responsible party." *Id.* In such situations, section 6381(d) "provides for an 'attenuated' standard of evidence in making a legal determination as to the [identity of the] abuser…." *Id.* (citation omitted).

> Under section 6381(d),
>
> evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person

may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the [county] agency and the rebuttal of the parent or responsible person.

*In re L.Z.*, 111 A.3d 1164, 1185 (Pa. 2015) (footnote omitted); *see also id.* ("emphasiz[ing] that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflicted the injury or failed in their duty to protect the child").

Here, Father argues the juvenile court erred in finding that Child's "injury was the type of injury that ordinarily would not be sustained or exist except by reason of Father's omission." Father's Brief at 31-32. Father asserts that "[f]entanyl exposure is not the *type* of abuse that ordinarily does not occur *except by reason* of an act or omission of a parent." *Id.* at 32 (emphasis in original). Father argues that Mother brought the drugs into the home, and emphasizes his own testimony that, "once he became aware" of Mother's drug use, Father "took protective steps to eliminate any risk" to Child. *Id.* Father asserts that "[d]espite a parent's best efforts, exposure to toxic substances can still occur accidentally, as it did here." *Id.*

Father further argues that, even if section 6381(d) applies to the type of abuse Child suffered, the juvenile court erred in determining Father failed to sufficiently rebut the presumption that he perpetrated the abuse. *Id.*

Father again relies on his own testimony regarding his efforts to remove Mother from the home and discard her drug paraphernalia, and asserts the juvenile court erred in determining Father's testimony was not credible. *Id.* at 35-36.

Regarding its application of section 6381(d), the juvenile court reasoned as follows:

> There is clear and convincing evidence to support the [c]ourt's finding of child abuse pursuant to [subsection] 6381(d). [Child] was in a home with Father when she was exposed to extraordinary dangers. The harm she suffered as result of being left exposed to these dangers would not ordinarily have occurred but for Father's failure to act.
>
> Father was responsible for the welfare of [Child] in his home when [Child] almost died from fentanyl. As a parent in the home with [Child], Father omitted to take the steps necessary to shield [Child] from the drug that nearly took her life. Ordinarily, a child will not end up with fentanyl in their system if the parent responsible for their welfare takes steps to prevent the child from having contact with known risks of illicit substances such as narcotics. In this case, Father knew that Mother had illicit drugs and paraphernalia in the home, and [Child] ended up with fentanyl in her system. Under these facts, there is clear and convincing *prima facie* evidence of child abuse by Father.
>
> Father was home with [Child] on the night [Child] almost died from a known risk of deadly drugs in the [home]. These core facts were unrebutted by Father at the [dependency] hearing…. As a result, the presumption of child abuse pursuant to [subsection] 6381(d) was insufficiently rebutted[,] and there is clear and convincing *prima facie* evidence of child abuse by Father. The [c]ourt did not err in its finding of child abuse[, because] Father was home with [Child] and responsible for her welfare. The predictable harm to [Child] is *prima facie* evidence that Father failed to act in a way to protect [Child], thus exhibiting clear and convincing evidence of child abuse by Father.

Juvenile Court Opinion, 1/28/26, at 8-9 (unpaginated).

Our review suggests that, to the extent the juvenile court applied section 6381(d)'s evidentiary presumption, it appears to have done so only in the alternative. As discussed above in connection with Father's first issue, the juvenile court found—without any apparent resort to section 6381(d)—that Father was a perpetrator of child abuse under 23 Pa.C.S.A. § 6303(b.1)(1), (5), and (7). In light of our disposition of Father's first issue, it is not clear that we need to reach his second.

Nevertheless, even if the juvenile court's finding that Father perpetrated child abuse had rested on an application of section 6381(d)'s presumption, we would discern no abuse of discretion in the court's application of section 6381(d). We agree with the juvenile court that Child's near-fatal fentanyl overdose constitutes child abuse that would not have ordinarily occurred but for the acts or omissions of the parent or person responsible for Child's care. It is undisputed that Father was a parent responsible for Child's care at the time of her overdose. Section 6381(d)'s presumption would therefore apply against Father. *See Int. of G.R.*, 282 A.3d at 381.

We further agree with the juvenile court that Father failed to rebut the presumption. In asserting he rebutted the presumption, Father relies on his own version of events, which the juvenile court explicitly discredited. *See In re L.Z.*, 111 A.3d at 1185 (recognizing the juvenile court's role in evaluating the credibility of a parent's rebuttal evidence under section 6381(d)). As discussed above, we are bound by the juvenile court's credibility

determinations. *See Int. of G.R.*, 282 A.3d at 381. Accordingly, Father's second issue fails.

In his third issue, Father argues the juvenile court erred in determining that aggravated circumstances existed as to Father. *See* Father's Brief at 36-40. The Juvenile Act provides that, in connection with dependency proceedings, "[i]f the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist." 42 Pa.C.S.A. § 6341(c.1). The Juvenile Act defines "aggravated circumstances," in pertinent part, as follows:

> "**Aggravated circumstances**." Any of the following circumstances:
>
> ***
>
> The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

42 Pa.C.S.A. § 6302. "Aggravated physical neglect" is defined as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id.*[5]

_____

[5] Where a juvenile court determines aggravated circumstances exist, the court may, at its discretion, determine to end efforts to preserve or reunify the family. *See* 42 Pa.C.S.A. § 6341(c.1); *In re L.V.*, 127 A.3d 831, 839 (Pa. Super. 2015). Instantly, the juvenile court ordered that "efforts shall continue to be made to preserve the family and reunify [] Child with [] Mother and Father." Aggravated Circumstances Order, 10/17/25.

Here, Father argues the record does not support a finding that Child was the victim of aggravated physical neglect by Father. Father's Brief at 36. Father asserts that "the presence of fentanyl in [Child's] urine and the corresponding symptoms [Child] experienced … do not rise to the level of a 'life-threatening condition[.]'" *Id.* Father argues that, "[w]hile Dr. Atkinson testified that this incident was certified as a 'near fatality,' Dr. Atkinson only testified that it was 'possible' that 'any' fentanyl exposure in 'any' child 'can be' fatal." *Id.* at 38 (quoting N.T., 10/17/25, at 37, 44). Father maintains Dr. Atkinson's "testimony cannot suffice under a clear and convincing evidence standard as establishing that [Child] suffered a 'life-threatening condition.'" *Id.* Referencing the arguments he made in connection with his first two issues, Father further asserts that, even if Child did suffer a life-threatening condition, that condition did not result from any omission by Father. *Id.*

In its Rule 1925(a) opinion, the juvenile court set forth the following in support of its aggravated circumstances determination:

> The [c]ourt correctly found clear and convincing evidence that aggravated circumstances existed against Father. The evidence is clear in this case that, by being exposed to fentanyl, [Child] suffered a type of bodily injury that created a substantial risk of death, thus [constituting] serious bodily injury. The evidence is clear in this case that Father neglected to protect [Child] from Mother's drugs and related needles, resulting in a life-threatening condition. The finding of aggravated circumstances against Father was entirely within the [c]ourt's discretion under these facts.

Juvenile Court Opinion, 1/28/26, at 9 (unpaginated).

We agree with the juvenile court's analysis and conclusion.  Our review discloses the medical evidence of record, including Dr. Atkinson's expert testimony, amply supports the juvenile court's finding that Child suffered a life-threatening condition.  *See* N.T., 10/17/25, at 38 (Dr. Atkinson testifying that "[f]entanyl in a child's system can be fatal"), 42 (Dr. Atkinson agreeing two tests confirmed the presence of fentanyl in Child's system), 44 (Dr. Atkinson testifying that the hospital certified the incident as a "near fatality" because Child presented "with a near-fatal episode of abuse or neglect" and required "medical intervention" via the administration of Narcan).  As discussed above in connection with Father's first issue, the record also supports the court's finding that Child's condition resulted from Father's omission.  Accordingly, we discern no abuse of discretion in the juvenile court's determination that aggravated circumstances existed as to Father.  Father's third and final issue therefore merits no relief.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026

- 21 -